# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LUCAS CIERPIOT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00090-RK |
| | ) |
| FAURECIA INTERIOR SYSTEMS INC., | ) |
| SPENCER WHITE, RENITA HIGGINS, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This civil lawsuit was removed from state court to federal court on February 11, 2021. (Doc. 1.) Plaintiff Lucas Cierpiot asserts a claim of discrimination under the Missouri Human Rights Act ("MHRA") against Defendant Faurecia Interior Systems, Inc. ("FIS") and a separate tort claim for conversion against Defendants Spencer White and Renita Higgins. In their notice of removal, Defendants argue this Court has subject matter jurisdiction under 28 U.S.C. § 1332 since Defendants White and Higgins, who the parties appear to agree are otherwise non-diverse defendants, were fraudulently joined. Specifically, Defendants assert Plaintiff's tort claim against Defendants White and Higgins is preempted by the MHRA. On March 4, 2022, Plaintiff filed a motion to remand, arguing this Court lacks subject matter jurisdiction because the conversion claim is not preempted by the MHRA and therefore Defendants White and Higgins were not fraudulently joined. (Doc. 12.) Plaintiff's motion to remand is fully briefed. (Docs. 13, 15, 19.)

As explained below, the Court does not find Defendants sufficiently meet the high bar to establish Defendants White and Higgins were fraudulently joined and, as a result, complete diversity did not exist at the time of removal. Therefore, this Court lacks subject matter jurisdiction. Plaintiff's motion to remand (Doc. 12) is **GRANTED**, and the case is remanded to state court.

### I. Background

From February 2019 through June 2020, Plaintiff was employed by Defendant FIS and worked at Defendant FIS's plant in Blue Springs, Missouri. (Doc. 1-2 at ¶ 3.) Plaintiff alleges after he returned from approved medical leave and additional medical leave during which he called the "absentee reporting line every single day," he was told he had several "no-call/no-show" days

and was then escorted off the premises by Haley Brown. (*Id.* at ¶¶ 16, 19, 20, 21.) After being escorted off the premises, Plaintiff alleges Defendants White or Higgins (or both) "directed the discarding and/or . . . discarded the entire contents of plaintiff's employee locker No. 102." (*Id.* at ¶ 23.) Plaintiff alleges they "thr[ew] his belongings into the trash" including "original medical records and documentation relating to the condition at issue in this case, valuable dishes as part of a Set of Dishware, [and] a recently purchased Carhartt sweatshirt in excess of eighty five dollars." (*Id.* at ¶ 24.)

Plaintiff alleges Defendant FIS discriminated against him based on his medical condition and surgery by failing to provide a requested accommodation and retaliated against him when he spoke with the Senior Corporate Director of Safety, Spencer White, about his vision condition and the impact of lasers he was tasked to work with despite his vision condition. Plaintiff specifically alleges Defendant White gave Plaintiff "a printout from the internet for a benign laser that was completely different than the lasers in use at the work station plaintiff was assigned to" and refused to read medical documentation from Plaintiff's eye surgeon explaining Plaintiff's vulnerability to lasers. (*Id.* ¶¶ 45-47, 50, 51.) Additionally, Plaintiff asserts on May 18, 2020, after clocking out and ending his work day he was "summoned to Senior HR Executive Director Renita Higgins's . . . office" where "HR . . . alleged that plaintiff had accumulated four (4) attendance points" but was not given supporting documentation. (*Id.* at ¶¶ 32-34.) Plaintiff alleges the meeting and "notice of four points" were retaliatory and violated Defendant FIS's own policies. (*Id.* at ¶ 36.) Plaintiff also alleges on June 16, 2020, he was "falsely blamed" in an act of retaliation for a mistake made by a co-worker and was "falsely and retroactively written-up in an act of retaliation by supervisor Floyd Joy." (*Id.* at ¶ 39.)

Finally, on June 28, 2020, "Justin Bond in human resources" informed Plaintiff he was "terminated for points." (*Id.* at ¶ 40.) Plaintiff alleges he never received a certified letter from Defendant FIS regarding his termination despite being told he would and, in addition, was not paid for an authorized sick day for June 25, 2020, in retaliation. (*Id.* at ¶¶ 40, 41, 42.)

## II. Legal Standard

Defendants, who collectively invoke this Court's jurisdiction, bear the burden of proving that all prerequisites to jurisdiction are satisfied. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). "A defendant may remove a state law claim to federal court only if the action

2

originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (citation omitted).

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Prempro*, 591 F.3d at 620 (citation omitted). Fraudulent joinder – the filing of a "frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal" – acts as an exception to the complete diversity rule. *Id.* Stated differently, "a plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citation omitted).

Whether a non-diverse party has been fraudulently joined such that the federal court may nonetheless obtain subject matter jurisdiction depends on "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007) (citation and quotation marks omitted). The Eighth Circuit has explained that the "reasonableness of the basis underlying the state claim" is critical to this inquiry. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003). In *Filla*, the Eighth Circuit explained the critical difference between circumstances in which courts should find a non-diverse defendant was fraudulently joined and those in which they should not: "Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent" but "if there is a 'colorable' cause of action – that is, if the state law might impose liability on the resident defendant under the facts alleged [or, in other words, if there exists a reasonable basis in fact and law supporting the claim] – then there is no fraudulent joinder." *Id.* (citations and footnote omitted); *see also Hayes v. Rad Transport, Inc.*, No. 10-0787-CV-W-ODS, 2010 WL 3807052, at *2 (W.D. Mo. Sept. 23, 2010) (noting, "[t]he Court's task is to determine whether the claim clearly lacks any basis – that is, if it is barred as a matter of law or if it is based on facts that clearly provide no basis for liability").

"By requiring the defendant to prove that the plaintiff's claim against the non-diverse defendant has no reasonable basis in law and fact, [courts] require the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Knudson*, 634 F.3d at 980. In the fraudulent-joinder analysis, the Court does not focus on the

3

artfulness of the plaintiff's pleadings. *Id.* at 980 (citation omitted). That is because the reasonable basis standard articulated in *Filla* is distinct from and less demanding than the Rule 12(b)(6) plausibility standard. *Id.*; *see also Hayes*, 2010 WL 3807052 at *2 ("Where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question . . . but simply to remand the case and leave the question for the state courts to decide.'") (quoting *Filla*, 336 F.3d at 810). Any doubts about the propriety of removal or federal jurisdiction must be resolved in favor of remand. *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011).

## III. Discussion

At issue here is Plaintiff's tort claim for conversion asserted against non-diverse defendants, White and Higgins. If Plaintiff's conversion claim against Defendants White and Higgins is colorable, the complete-diversity requirement for purposes of federal subject matter jurisdiction was not satisfied at the time of removal and the case must be remanded to state court. On the other hand, if – as Defendants argue – Plaintiff's conversion claim is preempted by the MHRA, the fraudulent-joinder exception to complete diversity would apply and this Court would otherwise have subject matter jurisdiction notwithstanding incomplete diversity of parties.

The MHRA makes it unlawful for employers to discriminate on the basis of an employee's disability. § 213.070.1(3); *see* Mo. Rev. Stat. § 213.055.1(1) (setting forth particular "unlawful employment practice[s]"). In addition, § 213.070.2 states: "This chapter . . . shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." In both their notice of removal and opposition to Plaintiff's motion to remand, Defendants argue under Missouri law the MHRA provides the "exclusive remedy" for Plaintiff's conversion claim against Defendants White and Higgins, pointing to § 213.070.2, RSMo.[1] Thus,

---

[1] To the extent the parties address the MHRA's preemption of common law claims generally, the Court finds such analysis misplaced here since the specific claim at issue is Plaintiff's tort claim against a co-employee rather than the employer itself. *See T.F. v. BB St. Louis, LLC*, No. 4:20-CV-1526 RLW, 2021 WL 494795, at *4 (E.D. Mo. Feb. 10, 2021) (recognizing "the Missouri Supreme Court [has] ruled that the MHRA preempts common law claims against an employer . . . but the Missouri Supreme Court did not hold that the statute preempts tort claims against a co-employee" and the court was unaware of any "Missouri case holding tort claims against a co-employee . . . are preempted by the MHRA"); *see also State ex rel. Church & Dwight Co., Inc. v. Collins*, 543 S.W.3d 22 (Mo. banc 2018) (holding under the general preemption analysis the MHRA preempts common law claims of negligence and wrongful discharge asserted against an employer); § 213.010(8)(c) (defining the term "employer" under the MHRA to specifically *exclude* "[a]ny individual employed by an employer"). Rather, the critical inquiry is whether the MHRA's exclusive-remedy provision, § 213.070.2, applies to Plaintiff's tort claim against co-

4

the critical inquiry is whether Plaintiff's conversion claim against Defendants White and Higgins "aris[es] out of an employment relationship."

In their briefing, the parties primarily rely on two fraudulent-joinder cases from other courts in this district: *Van Alst v. Mo. CVS Pharmacy, LLC*, No. 4:20-cv-00155-NKL, 2020 WL 2319882 (W.D. Mo. May 11, 2020), and *Johnson v. Midwest Div.-RHB, LLC*, No. 4:20-CV-00728-BCW, 2021 WL 5541783 (W.D. Mo. Jan. 11, 2021). Plaintiff argues this case is like *Van Alst* and unlike *Johnson*, and Defendants argue vice-versa.

In *Van Alst*, in addition to MHRA claims against her former employer, the plaintiff asserted a tort claim for trespass to chattels against her former supervisor, a non-diverse defendant. 2020 WL 2319882, at *1. Specifically, the plaintiff alleged her former supervisor "caused the belongings that [plaintiff] kept while she worked at CVS to be destroyed" and that the supervisor did so "outside and beyond the scope of her employment with CVS." *Id.* In arguing against plaintiff's motion to remand, CVS argued the plaintiff's tort claim necessarily arose from her employment with CVS for purposes of the exclusivity provision since the tort claim involved items the plaintiff had kept while working at CVS and that "HR" had unlawfully disposed of those personal items. *Id.* at *2.

Ultimately, however, the district court concluded "on the face of the petition, the Court cannot say as a matter of law that the purported destruction of [plaintiff]'s personal property arose from an employment relationship." *Id.* Specifically, the district court reasoned: (1) "[t]he tort claim against [plaintiff's former supervisor] is not based on the facts underlying the MHRA claims"; and (2) "[t]he petition does not establish that [the former supervisor]'s alleged conduct was undertaken because of or in furtherance of either her or [plaintiff]'s relationship with CVS." *Id.* In fact, the district court recognized, plaintiff's petition expressly alleged the former supervisor's conduct occurred "outside and beyond the scope of her employment with CVS," an allegation the district court concluded was "plausible" since the former supervisor could have been, for example, motivated by personal animus or an intent to convert. *Id.* Ultimately, the district court concluded the "factual issue" of whether the supervisor's alleged conduct causing the destruction of plaintiff's personal property arose from an employment relationship meant plaintiff's tort claim was colorable and remand was appropriate since the court lacked subject matter jurisdiction. *Id.* at *3.

---

employees White and Higgins.

Similarly, in *Johnson*, the plaintiff asserted a tort claim of conversion against a co-employee who she alleged "destroyed or otherwise disposed of the personal property [plaintiff] had left in her . . . office when she went on medical leave." 2021 WL 5441783, at *4. In her complaint, however, the plaintiff alleged the co-employee "engaged in the alleged tortious conduct against [her] in the course and scope of [the co-employee]'s . . . employment." *Id.* As a result, the district court in *Johnson* distinguished the *Van Alst* case and held on the face of the complaint that the *Johnson* plaintiff's conversion claim against the non-diverse co-employee "ar[os]e from her employment relationship . . . such that the MHRA provides the exclusive avenue through which [plaintiff] may seek redress." *Id.* Consequently, the district court found the non-diverse co-worker was fraudulently joined and denied the plaintiff's motion for remand. *Id.*

Although not cited by either party in this context, an earlier decision by another court in this district further demonstrates the application of the exclusive-remedy provision in the MHRA. In *Huskey v. PetSmart, Inc.*, No. 18-00813-CV-W-NKL, 2019 WL 122873 (W.D. Mo. Jan. 7, 2019), in addition to MHRA claims brought against her employer, the plaintiff asserted a tort claim against a non-diverse co-employee for civil conspiracy to violate her rights under the MHRA. There, the district court found the civil conspiracy claim necessarily "ar[ose] from an 'employment relationship'" such that the MHRA's exclusivity provision applied to the claim since the civil conspiracy claim "concern[ed] what the statute defines as 'unlawful employment practice[s].'" *Id.* at *2-3.

Here, Plaintiff's conversion claim against Defendants White and Higgins is not based on the same facts that form the basis of his MHRA claim against Defendant FIS, and, unlike the claims at issue in *Huskey*, does not on its face otherwise necessarily involve unlawful employment practices as defined by the MHRA. Defendants' argument that "on its face, Plaintiff's conversion claim alleges that [Defendants] White and Higgins were acting within the course and scope of their employment" (Doc. 15 at 3) is not persuasive or supported by the record. To be sure, while Plaintiff's pro se petition[2] does not allege Defendants White and/or Higgins were acting within the course and scope of their employment when they discarded (or directed the discarding of) Plaintiff's personal items from his employee locker, neither does it allege Defendants White and/or Higgins were acting *outside* the scope of their employment in doing so. Whether Defendants

---

[2] Although Plaintiff filed the initial petition pro se, he is now represented by counsel.

White and Higgins are fraudulently joined, however, is an entirely different question from the sufficiency of Plaintiff's pro se pleadings to state a claim. *Knudson*, 634 F.3d at 980.

Without a specific allegation that Defendants White and/or Higgins were acting in the course and scope of their employment when they committed the allegedly tortious act, Defendants point to the circumstances surrounding this allegation to establish Plaintiff's conversion claim necessarily arises out of the employment relationship. For instance, Defendants point to the closeness in time of the alleged tortious act by Defendants White and/or Higgins as following what Plaintiff alleges was an act of retaliation by his employer – that is, Plaintiff's being escorted off the premises having been accused of having "had several days of no-call/no-show." Plaintiff does not allege that either Defendant White or Higgins were involved in that situation, however, and instead alleges "Haley Brown" accused him of having several no-call/no-show days. Additionally, it is not clear, for instance, at the time he was escorted off the premises whether he was terminated in a manner that would or could otherwise require that his employee locker be cleaned out or emptied. In fact, the petition alleges after he was escorted off the premises, Plaintiff "followed all the proper channels in order to preserve his job and acquire the necessary medical documentation to account for all absences" and indicates that Plaintiff subsequently returned to work. In a similar vein, the Court is not persuaded by Defendants' argument that Plaintiff's conversion claim necessarily "arises from an employment relationship" since the items involved in the alleged conversion were held in an employee locker and some of the items Plaintiff alleges were unlawfully discarded include medical records and documentation that are relevant to Plaintiff's MHRA claim. Without something more, it is not clearly established or alleged that Defendants White and/or Higgins were acting in the scope of their employment regarding the alleged tortious behavior as opposed to acting, for instance, with a personal animus or an intent to unlawfully convert Plaintiff's possessions.

Accordingly, the Court concludes this case is more like *Van Alst* than *Johnson* in that the petition does not demonstrate on its face Defendants White and/or Higgins were acting within the scope of an employment relationship and, therefore, the Court cannot conclude Plaintiff's tort claim is barred by the MHRA's exclusive remedy provision. Accordingly, the Court is not convinced there is no reasonable basis for predicting that the state law might impose liability based on the facts involved. Plaintiff's conversion claim is not based on the facts underlying his MHRA claim for retaliation and discrimination based on his disability. Where there is any doubt regarding

7

the sufficiency of the petition and the propriety of removal, "'the better practice is for the federal court not to decide the doubtful question . . . but simply to remand the case and leave the question for the state courts to decide.'" *Hayes*, 2010 WL 3807052 at *2 (quoting *Filla*, 336 F.3d at 810). Because it appears Plaintiff's conversion claim against Defendants White and/or Higgins is colorable, the Court lacks subject matter jurisdiction in the instant case because Defendants White and Higgins are non-diverse parties. Accordingly, the case must be remanded to state court pursuant to 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Plaintiff's motion to remand (Doc. 12) is **GRANTED** and the case is remanded to state court. [3]

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 19, 2022

---

[3] Prior to the filing of Plaintiff's motion to remand, Defendants White and Higgins filed a motion to dismiss Plaintiff's conversion claim against them on the same ground – that this claim is preempted by the MHRA. (Doc. 5.) Defendants' motion to dismiss is fully briefed. (Docs. 6, 14.) (Defendants did not file a reply in support of their motion to dismiss.) Because the Court finds it lacks subject matter jurisdiction and must remand the case to state court, however, it does not take up Defendants' motion to dismiss.